UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF FLORIDA
CASE NO.:

AEVON WATTS,

    Plaintiff,

v.

THE DIVINE SAVIOR SCHOOL, INC.
a Florida Not for Profit Corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, AEVON WATTS ("WATTS" or Plaintiff), by and through her undersigned counsel, hereby files this Complaint against Defendant, THE DIVINE SAVIOR SCHOOL, INC. (hereinafter "DSS" or "Defendant") and says:

## JURISDICTION AND VENUE

1.    This action is brought against Defendant for its unlawful employment practices pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), § 706(f) (42 U.S.C. § 2000e-5(f)), which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C. §§ 2000e, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Chapter 760, Fla. Stat.

2.    This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), because Plaintiff was employed by Defendant in this District; because Defendant, at all material times, conducted and continues to conduct business in the Southern District of Florida; because the actions which give rise to Plaintiff's claims happened within the Southern District of Florida; and because Defendant is subject to personal jurisdiction herein.

1

4. All conditions precedent to this action have been performed or waived.

## PARTIES

5. Plaintiff is a resident of Broward County, Florida, over the age of 18 years and otherwise *suis juris*. During all times relevant to this Complaint, Plaintiff was employed by Defendant as a special education teacher.

6. Plaintiff is a female who experienced disparate treatment, hostile work environment, and retaliation on the basis of her race. Plaintiff is therefore a member of a class protected under the Title VII and the FCRA because the terms, conditions, and privileges of her employment were altered because of her race.

7. Defendant is a Florida Not for Profit Corporation registered to do business within Florida, with its principal place of business in Doral, Florida. Defendant has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

8. Defendant has, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. §760.02(7)).

9. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") which was dually filed with the Florida Commission on Human Relations ("FCHR") pursuant to the work-sharing agreement between the EEOC and the FCHR.

10. Plaintiff filed her charge on or about August 12, 2021, which was no more than 300 days after the last discriminatory event occurred, to wit: March 16, 2021.

11. Plaintiff was issued a Notice of Suit Rights on March 3, 3022. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

## **GENERAL ALLEGATIONS**

12. Plaintiff worked for Defendant as a special education teacher from June 2020 until her termination on March 16, 2021.

13. During her employment with Defendant, Plaintiff's supervisor was the founder of DSS, Dr. John Althoff ("Althoff").

14. Throughout her employment, Plaintiff suffered on-going discrimination, harassment, and retaliation because of her race while she worked for Defendant.

15. Shortly after Plaintiff began working for Defendant, Althoff explicitly told Plaintiff that she would experience racism while working for the school and that he could not support her as a black woman.

16. Plaintiff was routinely treated differently than the other non-African-American teachers during her employment with Defendant.

17. In October 2020 when the school temporarily closed down due to COVID-19, Althoff sent a text to the teachers telling them not to come to school.

18. Plaintiff complied with Althoff's text and did not report to school during the COVID-19 closure.

19. Despite Plaintiff's compliance with his text, Althoff called Plaintiff to yell at her and berate her for nothing reporting to school during the COVID-19 closure.

20. Althoff scolded Plaintiff and told her she should have known that she was supposed to report to clean and if she did not come to the school to clean she would have to use her paid time off during the school closure.

21. Althoff did not call any other teacher to require them to come in or clean while the school was closed.

22. Althoff did not require any other teacher to use paid time off while the school was closed for COVID-19.

23. On numerous occasions, Althoff tried to intimidate Plaintiff and make her do racially stereotypical jobs that he did not require other non-African-American teachers do.

24. In one such occasion, Plaintiff was required to teach a cooking class at the main school, Divine Savior Academy ("DSA") even though she was employed by DSS and not by DSA.

25. When Plaintiff was required to take on this additional class that was unrelated to her special education teacher position, she already had a heavier workload than any other teacher and she was not paid for the extra class at DSA.

26. Althoff made Plaintiff endure endless racial conversations that made her feel uncomfortable including a discussion about a documentary on the Klu Klux Klan.

27. Althoff made several micro-aggressive comments with racial undertones such as telling Plaintiff he knew she voted for Biden when he won the Presidential election and "welcome to the new world order."

28. In October 2020, Plaintiff complained to the HR Department about the disparate treatment.

4

29. Following her complaint to the HR Department, Althoff told Plaintiff that since she complained he would have to document everything and he began giving Plaintiff unjustified bad reviews, punished her for refusing to provide additional services for free, and ultimately terminated her for not working while she was out on unpaid COVID-19 leave.

30. At the end of February/early March 2021, Plaintiff was required to take unpaid leave to quarantine because of COVID-19.

31. However, Plaintiff is aware that another similarly situated employee who was out for a month due to COVID-19 was paid for her time off.

32. Also while she was on leave, Althoff instructed and expected Plaintiff to perform work for Defendant while she was out on unpaid leave.

33. Plaintiff refused to provide services for the Defendant without compensation.

34. Defendant terminated Plaintiff while she was out on unpaid COVID-19 leave.

35. Even if Defendant had legitimate, non-discriminatory reasons for its actions, Plaintiff's race was, at minimum, a motivating factor in Defendant's disparate treatment of Plaintiff including but not limited to Plaintiff being singled out and subjected to heavier workloads; unjustified bad reviews, racially derogatory comments; being required to take unpaid leave due COVID-19 exposure and to use paid time off when the school was closed for COVID-19; and Defendant's decision to terminate Plaintiff [1].

36. Plaintiff has retained the undersigned firm to prosecute this action on her behalf and has agreed to pay it a reasonable fee for its services.

37. Plaintiff is entitled to reasonable attorneys' fees and costs if she is the prevailing party in this action.

---

[1] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

## COUNT I: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (DISCRIMINATION BASED ON RACE)

38. Plaintiff re-alleges and re-avers paragraphs 1 – 37 as fully set forth herein.

39. Plaintiff brings this action under Title VII for damages caused by Defendant's disparate treatment of Plaintiff on the basis of race.

40. Plaintiff is a member of a protected class, to wit, African American/black.

41. Since the beginning of Plaintiff's employment with Defendant, Plaintiff experienced discriminatory treatment due to Plaintiff's race.

42. Althoff consistently treated Plaintiff less favorably than Plaintiff's non-African-American co-workers. Specifically, Althoff required Plaintiff to maintain a heavier workload than the other teachers; subjected Plaintiff to offensive racial comments; required Plaintiff to use paid time off when the school was closed for COVID-19 and take unpaid leave when Plaintiff had to quarantine due to COVID-19; and terminated Plaintiff when she refused to work during her unpaid COVID-19 leave.

43. Althoff did not require other non-African American teachers to maintain the same heavy workload as Plaintiff; to take paid time off when the school was closed due to COVID-19 or to take unpaid time off if leave was needed due to COVID-19; or perform work for Defendant without compensation.

44. Due to the disparate treatment inflicted on Plaintiff on the basis of her race, Plaintiff was ultimately terminated.

45. Defendant's reasons for Plaintiff's heavier workload, requirement to use paid time off when the school was closed for COVID-19 and take unpaid leave when Plaintiff had to quarantine due to COVID-19; and termination were pretextual.

46. Even if Defendant had a legitimate, non-discriminatory reasons, Plaintiff's race was, at minimum, a motivating factor in Defendant's adverse employment decisions.

47. Defendant, including its supervisor, Althoff, acted with intentional disregard for Plaintiff's rights as an African American protected under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Althoff, and/or other employees.

48. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, § 706(g) as a direct result of Defendant's discriminatory actions.

49. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff AEVON WATTS requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Title VII;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

  c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

  d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

### COUNT II: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
### (HOSTILE WORK ENVIRONMENT)

50. Plaintiff re-alleges and re-avers paragraphs 1 – 37 as fully set forth herein.

51. Plaintiff brings this action under the Title VII for damages caused by Defendant's unlawful employment practices committed against Plaintiff by allowing and ratifying the disparate treatment Defendant's supervisors inflicted on Plaintiff on the basis of race.

52. Plaintiff is a member of a protected class, to wit, African American/black.

53. Since the beginning of Plaintiff's employment with Defendant, Plaintiff was subjected to constant and continual offensive and unwelcomed racially discriminatory conduct from her direct supervisor, Althoff, due to Plaintiff's race.

54. Althoff constantly treated Plaintiff less favorably than Plaintiff's non-African-American co-workers. Specifically, Althoff required Plaintiff to maintain a heavier workload than the other teachers; subjected Plaintiff to offensive racial comments; required Plaintiff to use paid time off when the school was closed for COVID-19 and take unpaid leave when Plaintiff had to quarantine due to COVID-19; and terminated Plaintiff when she refused to work during her unpaid COVID-19 leave.

55. Moreover, Plaintiff was subjected to racially offensive comments made by Althoff.

56. Althoff was Plaintiff's direct supervisor during Plaintiff's employment with Defendant during the times alleged by Plaintiff above. Althoff repeated and consistent disparate

8

treatment of Plaintiff, was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Defendant's supervisor's conduct was severe and pervasive from both a subjective and objective perspective.

57. Defendant, including its supervisor, Althoff, acted with intentional disregard for Plaintiff's rights as an African American person protected under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Althoff.

58. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII as a direct result of Defendant's discriminatory actions.

59. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff AEVON WATTS requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, § 706(g);

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not

been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT III: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 (RETALIATION)

60. Plaintiff re-alleges and re-avers paragraphs 1 – 37 as fully set forth herein.

61. Plaintiff brings this action for retaliation in violation of Title VII.

62. Plaintiff had been experiencing discriminatory treatment because Plaintiff is African American.

63. Plaintiff complained about the discriminatory treatment due to her to the HR department in October 2020.

64. As a result of Plaintiff's complaints, Defendant issued unjustified bad reviews against Plaintiff, punished Plaintiff for refusing to provide services for Defendant without compensation and ultimately terminated Plaintiff for refusing to work while she was out on unpaid COVID-19 leave.

65. Defendant's reasons for Plaintiff's unjustified bad reviews, punishments for refusing to work uncompensated, and termination were pretextual.

66. The unjustified bad reviews, punishments for refusing to work uncompensated, and termination all constitute an adverse employment actions under Title VII.

67. Defendant's actions were done with malice, and with disregard for Plaintiff's rights under Title VII. Defendant, by and through its officers, and/or supervisors, authorized,

condoned, and/or ratified the unlawful conduct of Althoff and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff AEVON WATTS requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, § 706(g);

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

### COUNT IV: VIOLATION OF FCRA
### (DISCRIMINATION BASED ON RACE)

68. Plaintiff re-alleges and re-avers paragraphs 1 – 37 as fully set forth herein.

69. Plaintiff brings this action under the Florida Civil Rights Act ("FCRA"), Fla. Stats. § 760.01 *et seq.*, for damages caused by Defendant's disparate treatment of Plaintiff.

70. Plaintiff is a member of a protected class, to wit, African American/black.

71. Since the beginning of Plaintiff's employment with Defendant, Plaintiff experienced discriminatory treatment due to Plaintiff's race.

72. Althoff consistently treated Plaintiff less favorably than Plaintiff's non-African-American co-workers. Specifically, Althoff required Plaintiff to maintain a heavier workload than the other teachers; subjected Plaintiff to offensive racial comments; required Plaintiff to use paid time off when the school was closed for COVID-19 and take unpaid leave when Plaintiff had to quarantine due to COVID-19; and terminated Plaintiff when she refused to work during her unpaid COVID-19 leave.

73. Althoff did not require other non-African American teachers to maintain the same heavy workload as Plaintiff; to take paid time off when the school was closed due to COVID-19 or to take unpaid time off if leave was needed due to COVID-19; or perform work for Defendant without compensation.

74. Due to the disparate treatment inflicted on Plaintiff on the basis of her race, Plaintiff was ultimately terminated.

75. Defendant's reasons for Plaintiff's heavier workload, requirement to use paid time off when the school was closed for COVID-19 and take unpaid leave when Plaintiff had to quarantine due to COVID-19; and termination were pretextual.

76. Even if Defendant had a legitimate, non-discriminatory reasons, Plaintiff's race was, at minimum, a motivating factor in Defendant's adverse employment decisions.

77. Defendant, including its supervisor, Althoff, acted with intentional disregard for Plaintiff's rights as an African American protected under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Althoff, and/or other employees.

78. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of FCRA.

79. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under FCRA. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff AEVON WATTS requests that:

   a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

   b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

   c. The Court award Plaintiff the costs of this action, together with reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

   d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT V: VIOLATION OF FCRA
## (HOSTILE WORK ENVIRONMENT)

80. Plaintiff re-alleges and re-avers paragraphs 1 – 37 as fully set forth herein.

81. Plaintiff brings this action under FCRA for damages caused by Defendant's unlawful employment practices committed against Plaintiff by allowing and ratifying the disparate treatment Defendant's supervisors inflicted on Plaintiff on the basis of race.

82. Plaintiff is a member of a protected class, to wit, African American/black.

83. Since the beginning of Plaintiff's employment with Defendant, Plaintiff was subjected to constant and continual offensive and unwelcomed racially discriminatory conduct from her direct supervisor, Althoff, due to Plaintiff's race.

84. Althoff constantly treated Plaintiff less favorably than Plaintiff's non-African-American co-workers. Specifically, Althoff required Plaintiff to maintain a heavier workload than the other teachers; subjected Plaintiff to offensive racial comments; required Plaintiff to use paid time off when the school was closed for COVID-19 and take unpaid leave when Plaintiff had to quarantine due to COVID-19; and terminated Plaintiff when she refused to work during her unpaid COVID-19 leave.

85. Moreover, Plaintiff was subjected to racially offensive comments made by Althoff.

86. Althoff was Plaintiff's direct supervisor during Plaintiff's employment with Defendant during the times alleged by Plaintiff above. Althoff repeated and consistent disparate treatment of Plaintiff, was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Defendant's supervisor's conduct was severe and pervasive from both a subjective and objective perspective.

87. Defendant, including its supervisor, Althoff, acted with intentional disregard for Plaintiff's rights as an African American person protected under FCRA. Defendant, by and

through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Althoff.

88.   Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of FCRA as a direct result of Defendant's discriminatory actions.

89.   Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under FCRA. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff AEVON WATTS requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with reasonable attorneys' fees incurred herein, pursuant to the applicable statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT VI: VIOLATION OF FCRA
## (RETALIATION)

90. Plaintiff re-alleges and re-avers paragraphs 1 – 37 as fully set forth herein.

91. Plaintiff brings this action for retaliation in violation of FCRA.

92. Plaintiff had been experiencing discriminatory treatment because Plaintiff is African American.

93. Plaintiff complained about the discriminatory treatment due to her to the HR department in October 2020.

94. As a result of Plaintiff's complaints, Defendant issued unjustified bad reviews against Plaintiff, punished Plaintiff for refusing to provide services for Defendant without compensation and ultimately terminated Plaintiff for refusing to work while she was out on unpaid COVID-19 leave.

95. Defendant's reasons for Plaintiff's unjustified bad reviews, punishments for refusing to work uncompensated, and termination were pretextual.

96. The unjustified bad reviews, punishments for refusing to work uncompensated, and termination all constitute an adverse employment actions under FCRA.

97. Defendant's actions were done with malice, and with disregard for Plaintiff's rights under FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Althoff and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff AEVON WATTS requests that:

    a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's

    discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff AEVON WATTS hereby demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: May 9, 2022

                        LAW OFFICES OF CHARLES EISS, P.L.
                        Attorneys for Plaintiff
                        7951 SW 6th Street, Suite 112
                        Plantation, Florida 33324
                        (954) 914-7890 (Office)
                        (855) 423-5298 (Facsimile)

                By:    /s/ Charles M. Eiss
                        CHARLES M. EISS, Esq.
                        Fla. Bar #612073
                        chuck@icelawfirm.com
                        SHANNA WALL, Esq.
                        Fla. Bar #0051672
                        shanna@icelawfirm.com