UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 22-21428-CIV-MORENO

AEVON WATTS,

        Plaintiff,

vs.

THE DIVINE SAVIOR SCHOOL, INC.,

        Defendant.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Aevon Watts filed this employment discrimination suit against The Divine Savior School, her former employer. The School moved to compel arbitration. The Court has considered the motion, the response in opposition, the reply, as well as the pertinent portions of the record. For the reasons that follow, the motion to compel arbitration, (D.E. 7), is **GRANTED**.

**I.    Background**

Aevon Watts is an African-American woman that worked as a special education teacher at The Divine Savior School from June 2020 until her termination in March 2021. John Althoff, the founder of the school, supervised her. Watts alleges that Althoff told her that she would experience racism while working for the school and that "he could not support her as a black woman." Indeed, Watts was "routinely treated differently than other non-African-American teachers during her employment." When the school closed because of COVID-19, Althoff told the teachers not to come to school, yet still called Watts to "yell" and "berate" her for not reporting to school. He also told her that she "should have known that she was supposed to report to clean" and that "if she did not come to the school to clean she would have to use her

paid time off during the school closure." Althoff did not make similar requests of any other teachers, nor did he request that they use paid time off during the COVID-19 closure.

On numerous other occasions, Althoff tried to intimidate Watts and make her do "racially stereotypical jobs that he did not require other non-African-American teachers" to do. For example, she was required to teach a cooking class at Divine Savior Academy, even though she was employed by Divine Savior School, not Academy. The School did not pay Watts extra for doing so, even though she "already had a heavier workload than any other teacher." Althoff also made Watts uncomfortable by forcing her into a conversation about a documentary on the Ku Klux Klan and making "micro-aggressive comments with racial undertones," such as remarking "welcome to the new world order" when President Biden was elected.

Watts complained to the Human Resources Department about this treatment in October 2020. After her complaint, Althoff told Watts that he "would have to document everything" and then began to give Watts "unjustified bad reviews" and "punished her for refusing to provide additional services for free." Further, Watts was forced to take unpaid leave to quarantine for COVID-19 while another "similarly situated employee" was out for a month because of COVID-19 but was paid for her time off. Althoff also expected Watts to get work done while she was on leave, but she refused to do so. She was then terminated.

## II.     Legal Standard

The validity of an arbitration agreement is governed by the Federal Arbitration Act. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Under the Act, a written agreement to arbitrate is valid, irrevocable, and enforceable, except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, courts are required to "either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the

plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Id.* (quoting *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)). These steps reflect the Supreme Court's instructions for district courts faced with motions to compel arbitration: a district court may compel arbitration only where it is satisfied that the parties agreed to arbitrate *that dispute*. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). This means that the court must resolve any questions about the formation or applicability of the specific arbitration clause that a party seeks to enforce. *Id.*

## III. Discussion

The School moved to compel arbitration and stay proceedings shortly after Watts filed this suit. Put simply, the School argues that Watts signed an employment agreement that contains an arbitration clause which reaches this disputes. The clause instructs that "[a]ny claim or controversy that arises out of or relates to this agreement, or the breach of it," shall be settled by arbitration. The School contends that it terminated Watts for legitimate, non-discriminatory reasons (like poor performance and insubordination) and that because "the claims raised in the complaint arose from the employment relationship," Watts is bound to arbitrate. In opposition, Watts raises two arguments, each of which is considered in turn.

Watts first argues that the Agreement lacks all the elements of a contract. Those elements are an offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). In particular, Watts argues that the dates of employment are lacking. It is true that the Agreement apparently expresses the wrong dates of employment. The first paragraph says the term will begin on July 13, 2019 and end on May 28, 2020, subject to annual review from the direct supervisor. Both parties apparently knew

that these dates were incorrect, since both signed the agreement in June 2020, after the specified period had ended. And Watts began her employment without any apparent issues that same month.

Notwithstanding this apparent error, all the elements of a contract were still present. Watts has not cited any authority suggesting that the dates of a contract are generally considered essential terms. This is not surprising, since there is no definitive checklist of such terms— courts are instead obliged to make a case-by-case determination in view of the nature of the contract. *See de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 682 (Fla. Dist. Ct. App. 2007). Relevant here, Florida law appears to hold that the lack of a specific date for performance does not automatically render a contract void, and that uncertainty can be cured by conduct, as it was here. *See* 11 Fla. Jur 2d Contracts § 46 (citing *Sanchis v. Rosell*, 569 So. 2d 833, 834 (Fla. Dist. Ct. App. 1990)); *Maines v. Davis*, 491 So. 2d 1233, 1235 (Fla. Dist. Ct. App. 1986) ("[T]he conduct of the parties through their course of dealings shall be considered to determine the meaning of the written agreement where the terms are in doubt[.]"); *see also id.* ("[T]he contract should not be held void for uncertainty unless indefiniteness reaches a point where construction becomes futile[.]"). Indeed, Florida courts specifically contemplate contractual employment terms for an indefinite period, which are simply terminable at will—it is not the case that no definite period of employment means no employment agreement at all. *Gibbs v. H.J. Heinz Co.*, 536 So. 2d 370, 371 (Fla. Dist. Ct. App. 1988). At bottom, what matters for the purposes of contract formation is that the parties assented to the same essential terms. *See Irby v. Mem'l Healthcare Grp., Inc.*, 901 So. 2d 305, 306 (Fla. Dist. Ct. App. 2005). It is clear that the parties in this case were able to do so, since both signed the Agreement in apparent disregard of the

incorrect dates and since Watts began at the school without controversy shortly after the Agreement's consummation.

Watts also points to other alleged essential terms which she says were lacking. Specifically, she argues that the Agreement contained no job description. She also adds that "paragraph 3 allows for job duties to be modified at the whim" of the school "and without further consideration or agreement." Yet Watts does not cite any authority which says that a job description beyond the title is an essential term or that a party's power to "reasonably modify" the duties may render a contract insufficiently specific.

Watts next argues that the arbitration clause is "limited to only the terms and conditions in the Agreement itself." Since Watts filed this case for violations of Title VII and the Florida Civil Rights Act, she says this suit does not concern "breach of the agreement" or a "controversy or act arising out of or relating to" the Agreement. This argument is not persuasive.

Federal district courts in this circuit have ruled that an arbitration clause for all claims that "arise out of or relate to" an employment agreement reaches discrimination claims under federal and state statutes. *See Milestone v. Citrus Specialty Grp., Inc.*, 2019 WL 5887179, at *2 (M.D. Fla. Nov. 12, 2019). The reasoning is that the plaintiff's rights under those statutes exist because of her status as an employee, and that status in turn arises from the terms of the employment agreement. *See Gonzalez v. AA Varco Moving & Storage, Inc.*, 2019 WL 2245478, at *3 (S.D. Fla. Mar. 18, 2019), report and recommendation adopted, 2019 WL 2245268 (S.D. Fla. Apr. 26, 2019); *see Smith v. Physicians United Plan, Inc.*, 2014 WL 12797219, at *2 (S.D. Fla. Dec. 19, 2014). This suit also relates to the Agreement because Watts's discrimination claims relate to compensation, paid time off, sick days, job responsibilities, and other aspects of her employment that are set out in the agreement. *See, e.g., Eiland v. Arctic Food Servs., Inc.*,

2008 WL 1821713, at *2 (S.D. Ill. Apr. 21, 2008). As a result, her suit will necessarily require reference to the Agreement.[1]

## IV. Conclusion

The Court finds that an enforceable agreement to arbitrate exists and that the scope of Watts's claims in this suit fall within the scope of that agreement. For that reason, the School's motion to compel arbitration is **GRANTED** and this case is **STAYED** until the parties notify the Court that arbitration has been completed.[2]

DONE AND ORDERED in Chambers at Miami, Florida, this _____ of August 2022.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[1] Watts adds that the Agreement does not discuss discrimination or harassment and the dates of the Agreement do not encompass the dates of the alleged violations. But an arbitration clause need not list every type of claim to which it applies. And for the reasons explained above, the incorrect dates in the Agreement do not control its applicability. Otherwise, the parties would have entered into a contract that meant nothing. *See Maines*, 491 So. 2d at 1235 (Fla. Dist. Ct. App. 1986) (explaining that "the interpretation of the contract should be consistent with reason").

[2] Watts requests that the Court "blue-pencil the arbitration clause" to say that the arbitration shall be conducted in accordance with the "employment rules of the American Arbitration Association." The Court declines this request and leaves that for the parties to sort out with the arbitrator.